UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL P. BAKER, *et al.*, | No. C-05-2500 EMC |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND TO STATE COURT** |
| v. | **(Docket No. 13)** |
| BDO SIEDMAN, L.L.P., *et al.*, | |
| Defendants. | |

Plaintiffs in this action are six individuals who hired Defendants to provide tax services and investment advice. Plaintiffs initially filed suit against Defendants in state court. Subsequently, Defendants removed the case to federal court on the basis that, even though Plaintiffs pled only state law claims, there was a substantial federal issue involved in the case. Pending before the Court is Plaintiffs' motion to remand the case to state court. Having considered the parties' briefs and accompanying submissions as well as the argument of counsel, the Court hereby GRANTS the motion for remand.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

On May 12, 2005, Plaintiffs filed suit in San Francisco Superior Court, alleging six causes of action against Defendants: (1) professional negligence, (2) breach of fiduciary duty, (3) fraud and deceit, (4) negligent misrepresentation, (5) violation of California Business & Professions Code § 17200, and (6) declaratory relief on an arbitration clause. Basically, there are two allegations underlying the primary claims (*i.e.*, the first five causes of action): first, that Defendants knowingly advised Plaintiffs to invest in illegal tax shelters and, second, that Defendants should have disclosed

to Plaintiffs notices and warnings that Defendants received from the IRS regarding illegal tax shelters.

For example, in the claim for fraud and deceit, Plaintiffs claimed that,

> [i]n order to induce Plaintiffs to pay [Defendants] millions of dollars in fees [for their services and advice], Defendants knowingly made false affirmative misrepresentations and intentional omissions of material fact including: (1) promising to create legal tax structures that would reduce/eliminate Plaintiffs' federal income tax obligations; (2) representing to Plaintiffs that the tax structure was properly allowable for income tax purposes; and (3) failing to disclose that the IRS deemed the very investment Defendants were promoting to be an abusive tax shelter.

Compl. ¶ 120.

On June 20, 2005, Defendants removed the case to federal court, citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*, 125 S. Ct. 2363 (2005). On July 1, 2005, Plaintiffs moved for a remand to state court.

## II.  DISCUSSION

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing that removal is proper. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990). The removal statute is strictly construed, and a court must reject federal jurisdiction if there is any doubt as to the right of removal in the first instance. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

Federal jurisdiction is traditionally predicated upon diversity jurisdiction or federal question jurisdiction. "[F]ederal-question jurisdiction is invoked by and large [when] plaintiffs plead[] a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction" which the Supreme Court has "recognized for nearly 100 years" -- namely, that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 125 S. Ct. at 2366-67. The Supreme Court has said that this "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

2

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 2367. In *Grable*, a recent opinion issued by the Supreme Court, the test for federal jurisdiction was formulated as follows: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" *Id.* at 2368.

In *Grable*, the IRS had seized the plaintiff's land to satisfy a federal tax delinquency and had notified him of the seizure by mail. *See id.* at 2366. Thereafter, the IRS sold the property to the defendant. *See id.* The plaintiff sued for quiet title in state court, alleging that, by notifying him of the seizure by mail rather than by personal service, the IRS failed to comply with the notice requirement provided for by 26 U.S.C. § 6335. *See id.* The defendant removed the case to federal court, asserting federal question jurisdiction, and the plaintiff's motion to remand to state court was denied. *See id.* Applying the above test, the Supreme Court concluded that removal was proper. First, a federal issue was in dispute because the parties disputed the meaning of the notice provision. *See id.* at 2368. Second, the question of whether the plaintiff was given notice as defined by the federal law was an essential element of the plaintiff's quiet title claim and thus the issue was necessarily raised. *See id.* Third, as to the substantiality of the federal issue, the Court held that the meaning of the tax provision at issue was an important issue of federal law "sensibly belong[ing] in federal court." *Id.* The Court reasoned that the "government has a strong interest in the 'prompt and certain collection of delinquent taxes.'" *Id.* Resolution of the notice provision would be important to the IRS's ability to satisfy its claims from the property of delinquents and sell the property to purchasers. *See id.* The Court referenced the government's interest in a federal forum to satisfy its claims over the property of tax delinquents, and the fact that buyers and delinquents may find it valuable to come before judges accustomed to federal tax matters. *See id.* Finally, in finding that federal jurisdiction in this case would not upset the federal and state division of labor, the Court reasoned that, since "it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

1  The parties do not dispute that whether there is federal jurisdiction in the instant case should
2  be resolved by application of the *Grable* test, and the Court agrees that the *Grable* test should be
3  applied as Plaintiffs have pled in their complaint only state law claims.  Thus, the question for the
4  Court is whether Plaintiffs' state law claims "necessarily raise a stated federal issue, actually
5  disputed and substantial, which a federal forum may entertain without disturbing any
6  congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.  The
7  Court concludes that federal jurisdiction is not proper in the instant case because Plaintiffs' state law
8  claims do not necessarily raise a federal issue.

9  In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), the Supreme Court
10 stated that, "[i]f on the face of a well-pleaded complaint there are reasons completely unrelated to
11 the provisions and purposes of [federal law] why the [plaintiff] may or may not be entitled to the
12 relief it seeks," then the claim does not "arise under" federal law.  *See id.* at 810 (internal quotation
13 marks omitted).  Citing *Christianson*, the Ninth Circuit has held that, "when a claim can be
14 supported by alternative and independent theories -- one of which is state law theory and one of
15 which is a federal law theory -- federal question jurisdiction does not attach because federal law is
16 not a necessary element of the claim." *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 346 (9th Cir.
17 1996); *see also Lippitt v. Raymond James Fin. Serv., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003)
18 (noting that, under California Business & Professions Code § 17200, a plaintiff must show that a
19 business practice is unlawful or unfair or fraudulent; federal law was not a necessary element of
20 plaintiff's § 17200 claim because he did not "have to rely on a violation of the Exchange Act nor an
21 infraction of an NYSE rule or regulation to bring [the § 17200] claim [--] [h]e merely has to allege
22 that Defendants' conduct was either unfair or fraudulent").

23 As noted above, in the instant case, Plaintiffs' basic state law claims of fraud and deceit are
24 supported by two basic allegations regarding wrongdoing by Defendants: (1) that Defendants
25 knowingly advised Plaintiffs to invest in illegal tax shelters and (2) that Defendants should have
26 disclosed to Plaintiffs notices and warnings that Defendants received from the IRS regarding illegal
27 tax shelters.  The first allegation requires interpretation of federal law, namely, federal tax law.
28 However, the second allegation does not.  In order to establish that Defendants breached their

1  fiduciary duty to Plaintiffs or acted fraudulently in this regard, Plaintiffs would not have to show that
2  the tax shelters promoted by Defendants were in fact illegal.  Rather, Plaintiffs could establish
3  liability by showing that Defendants failed to disclose material facts to Plaintiffs, e.g., that the IRS
4  notices and warnings expressed concern about the tax shelters.

5        The critical question in the instant case is whether these two allegations in the complaint are
6  separate legal claims for relief or instead "alternative and independent theories" of liability.  *Rains*,
7  *supra*.  If the former, federal jurisdiction obtains if any claim requires the resolution of a substantial
8  federal question.  If the latter, federal jurisdiction would not be proper because each of Plaintiffs'
9  claims would be capable of being resolved on state law grounds without the interpretation of federal
10 law.  The bifurcation between claims and theories is illustrated by a number of cases in this and
11 other circuits.

12       A number of cases decided by courts in this circuit have taken a broad approach in defining
13 claims in the context of analyzing federal jurisdiction.  In *Rains*, the plaintiff filed a state-law claim
14 for wrongful termination in violation of public policy.  *See Rains*, 80 F.3d at 339.  One of the public
15 policies cited by the plaintiff was Title VII of the 1964 Civil Rights Act.  *See id.* at 343.  The
16 defendants removed the case to federal court, claiming, *inter alia*, that the plaintiffs' state law claim
17 necessarily turned on the construction of Title VII, a substantial federal question.  *See id.* at 343.  In
18 finding that there was no federal jurisdiction, the Ninth Circuit stated that, since the case was not
19 filed as a Title VII claim, the state-law public policies cited in the complaint provided alternate and
20 independent grounds on which the case could be decided, and so it was not necessary to litigate the
21 federal issue.  *See id.* at 345 46.  In particular, the public policy violation could have been based on
22 the state Fair Employment and Housing Act and California Constitution (as well as Title VII).

23       In *Lippitt*, the defendants argued that removal to federal court was proper because, even
24 though the plaintiffs pled only a state claim pursuant to California Business & Professions Code §
25 17200, that claim asserted a violation of federal law, namely the Exchange Act.  *See id.* at 1037.
26 The Ninth Circuit disagreed.  To prove the § 17200 claim, the plaintiff need only prove that the
27 practice being challenged was "deceptive" or "unfair," not necessarily that it was unlawful under
28 federal law.  *See id.* at 1043.  *See also Duncan,* 76 F.3d at 1486 (California law (even when not

5

asserted in the complaint) provided a "theoretical basis" under which the claim could have been filed, thus foreclosing the option of federal jurisdiction).

*In re Circular Thermostat Antitrust Litig.*, MDL C05-01673WHA, 2005 WL 2043022 (N.D. Cal. Aug. 24, 2005), the plaintiffs asserted violations of state statutory and common law based on various deceptive and monopolistic business practices by the defendant -- *e.g.*, threatening and coercing rival manufacturers into not producing competing products by a pattern of sham and baseless trademark infringement litigation, deceiving the PTO into believing no competition existed (something it knew to be false) and thereby securing its registered trademark, coming with a rival manufacturer to prevent that rival from giving unfavorable testimony in opposition to the defendant's second trademark application, and purchasing at least one rival manufacturer so as to suppress competition and to mislead the PTO. *See id.* at *1-2. Judge Alsup of this Court acknowledged that the plaintiffs' claims were infused with federal law, namely, federal trademark law. However, he pointed out that "an alternative theory of predatory action is pled, albeit less prominently. This alternative theory is that [the defendant] purchased 'at least one rival thermostat manufacturer so as to suppress competition for circular thermostats in the relevant market.'" *Id.* at *6. Notably, Judge Alsup rejected the defendant's argument that the acquisition of the rival manufacturer was also an instrument for deceiving the PTO, thereby implicating federal law. *See id.*

> This argument proves too much. [The defendant's] acquisition (and elimination) of a competitor to maintain its monopoly position in the market could *itself* lend support to claims of unlawful restraint of trade or unfair competition. Viewed in this light, it would be irrelevant to plaintiffs' claims whether defendants' subsequently-acquired trademark was invalid or fraudulently obtained. Under this theory, the alleged harm of supra-competitive prices does not stem from trademark misuse or any fraudulent conduct before the PTO. It simply results from the eliminating of a competing thermostat manufacturer that would otherwise check defendant's power to engage in monopolistic pricing.

*Id.* at *7 (emphasis in original).

In each of the above cases, the legal claim in question was broadly construed as encompassing alternative theories of liability, including state-based theories.

6

On the other hand, in *Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005), Second Circuit held that "what a plaintiff presents as one 'count' may be understood to encompass more than one claim.'" *Id.* at 194. In particular, what the plaintiff had called a single "breach of contract" count actually consisted of two distinct claims: (1) the defendants had breached a provision of a federal law (incorporated by reference into the contract) by failing to provide the plaintiffs with uniform rates and (2) the defendants had breached a provision of state law (also incorporated by reference into the contract) by failing to provide the plaintiffs with notice of seasonal rate changes. *See id.* The court reasoned that the state law contract claim was logically separable from the federal law contract claim and could be treated as if it was a separate count. *See id.* It was thus necessary to litigate a question of federal law in order to resolve the entire case. *See id.* at 195.

While the question is certainly debatable, the Court concludes that the allegations of fraudulent and deceitful conduct here constitute alternative theories of a single legal claim rather than two separate and distinct claims and that *Rains*, *Lippitt*, and *In re Circular Thermostat Antitrust Litigation* rather than *Broder* controls. The Court so concludes for several reasons.

First, to the extent the Second and Ninth Circuits diverge on the breadth of construction afforded in determining whether one or multiple claims are alleged, this Court is bound by the Ninth Circuit. Moreover, the Ninth Circuit's approach is more consistent with the general rule that the removal statute should be narrowly construed and that doubts about removal jurisdiction should be resolved against removal. *Duncan*, *supra*, 76 F.3d at 1485.

Second, the allegations of deceitful conduct in the case at bar entail numerous acts describing a course of conduct. The allegations here are more akin to *In re Circular*, which entailed a course of alleged conduct consisting of various monopolistic acts, rather than to *Broder*, where there were breaches of two separate and distinct clauses of a contract. It should be noted that, in California, courts have expressly held that each breach of contract should be considered a separate cause of action. *See* 4 Witkin Cal. Proc. Plead. § 53 ("Separate breaches create separate causes of action."). *See, e.g., Ormerod v. Security First Nat'l Bank,* 21 Cal. App. 2d 362, 366 (1937) (holding that plaintiff-beneficiary alleging that defendant-trustee filed five false annual accounts concerning five

separate purchases of securities for the trust had pled five separate causes of action); *Paladini v. Municipal Markets Co.,* 185 Cal. 672, 674 (1921) (holding that actions on the part of plaintiff-wholesaler to recover money from defendant-dealer, when goods were purchased at different branches of plaintiff, constituted separate causes of action). The same is not true as to fraud and deceit. A series of deceitful misrepresentations and/ or omissions commonly constitute a single claim of fraud and deceit; each misrepresentation typically is not alleged as a separate claim or cause of action. *See, e.g., Stoner v. Williams*, 46 Cal. App. 4th 986, 1004 (1996) (holding that the existence of multiple legal theories or alternative fraudulent acts did not alter the conclusion that there remained only a single cause of action); *Conger v. White* (1945) 69 Cal. App. 2d 28, 41 (holding that, "in an action for damages for fraud, a complaint which alleges a series of fraudulent acts committed in the execution of an entire scheme to divest plaintiff of his property states a single cause of action").

Third, in *Broder*, the plaintiff sought, among other things, a declaratory judgment that the defendant had violated federal law. *See id.* at 195. The *Broder* court pointed out that "one of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it." *Id.* The court reasoned that, because the plaintiff could not get such declaratory relief without a finding that the defendant had violated federal law, this dispelled any doubt that the plaintiff had brought distinct claims. *See id.* Unlike the plaintiff in *Broder*, Plaintiffs in the instant case could obtain the same relief they seek irrespective of whether the fraudulent and deceitful conduct is established by the first theory of affirmative misrepresentation or the second theory of concealment. *See* Comp. ¶¶ 126-27 (in fraud claim, alleging economic loss as a result of Defendants' fraudulent and deceitful conduct -- *i.e.*, loss of investment).[1] The fact that one remedy is sought implies there is one claim at least for purposes of jurisdictional analysis.

---

[1] In fact, the damages that Plaintiffs seek for each of the primary causes of action (*i.e.*, professional negligence, breach of fiduciary duty, fraud and deceit, negligent misrepresentation, and violation of California Business & Professions Code § 17200) are the same. *See* Compl. ¶¶ 112, 117, 131, 134 (alleging economic loss as result of Defendants' wrongdoing).

8

Since the Court concludes that Plaintiffs' allegations of wrongdoing constitute alternative and independent theories of liability, and not separate claims, federal jurisdiction over this case does not obtain. Plaintiffs' claims of fraud and deceit and all the other cognate claims derived therefrom are capable of being resolved on state law bases without the interpretation of federal law. Because Plaintiffs' claims do not "necessarily" raise a stated federal issue, the *Grable* test of federal jurisdiction is not met.

### III.  CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for remand. The Clerk of the Court is directed to close the file in this case.

This order disposes of Docket No. 13.

IT IS SO ORDERED.

Dated: September 29, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge